COPY

1   KAREN MATTESON, Cal. Bar No. 102103
    Email:  mattesonk@sec.gov
2   JASON P. LEE, Cal. Bar No. 196520
    Email:  leejas@sec.gov
3
    Attorneys for Plaintiff
4   Securities and Exchange Commission
    Rosalind R. Tyson, Regional Director
5   John M. McCoy III, Associate Regional Director
    5670 Wilshire Boulevard, 11th Floor
6   Los Angeles, California 90036
    Telephone:  (323) 965-3998
7   Facsimile:  (323) 965-3908

8

FILED

10 SEP 14 PM 3: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11   SECURITIES AND EXCHANGE       Case No. **CV10  6835**  RGK  JCG
     COMMISSION,
12                                 **COMPLAINT**
                Plaintiff,
13
14          v.
15   LADP ACQUISITION, INC.;
     WILLIAM A. GOLDSTEIN and
16   MARC E. BERCOON,
17              Defendants.
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa.  Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

2.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district, and the Defendants transact or have transacted business in this district.

### SUMMARY

3.      From about mid-2009 through the present, the Defendants have raised at least $3.2 million from approximately 110 investors in the United States, in an unregistered securities offering.  The Defendants, through their sales agents, cold-call investors, offering and purporting to sell shares in L.A. Digital Post, Inc. ("L.A. Digital"), a television and film production company with offices in Los Angeles and New York, purportedly to grow the business of L.A. Digital.  Among other representations, the Defendants and their agents tell investors that L.A. Digital will conduct an initial public offering ("IPO") of its stock within two to six months, and that its shares will soon trade on the New York Stock Exchange or the American Stock Exchange.  In fact, the Defendants have been employing a "bait-and-switch" scheme whereby purchasers of the shares have received stock

1  certificates stating that they own shares in Defendant LADP Acquisition
2  ("LADP"), rather than in L.A. Digital.  No public offering of L.A. Digital stock has
3  occurred.  Moreover, the Defendants have not distributed any monies raised in the
4  LADP offering to L.A. Digital.  Instead, Defendants Goldstein and Bercoon, who
5  control LADP's bank accounts, have misappropriated for their own use and the use
6  of other companies they control at least $874,289 of the $3.2 million in investor
7  funds raised.

8      4.    The Defendants have violated and are violating the securities
9  registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C.
10  §§ 77e(a) & 77e(c), and the antifraud provisions of Section 17(a) of the Securities
11  Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. §
12  78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  By this action, the
13  Commission seeks a temporary restraining order and preliminary and permanent
14  injunctions prohibiting future such violations, an order freezing the Defendants'
15  assets, an order prohibiting destruction of documents, an accounting, disgorgement
16  of the Defendants' ill-gotten gains, and civil penalties.

### THE DEFENDANTS

19      5.    **LADP Acquisition, Inc.** is a Delaware corporation located in Atlanta,
20  Georgia.  On January 8, 2010, the State of Pennsylvania issued a cease and desist
21  order against LADP to halt the unregistered offering of LADP shares.  It has no
22  business operations.

23      6.    **William A. Goldstein** resides in Atlanta, Georgia.  He purports to be
24  an investor and entrepreneur and claims to be a founding member of WebMD.
25  Goldstein owns, directly or indirectly in conjunction with Bercoon, a substantial
26  interest in L.A. Digital, a television and film production company with offices in
27  Los Angeles and New York.  He represents that he is the Chairman of L.A. Digital
28  and/or LADP, but he in fact is not involved in the daily operations of L.A. Digital.

1   Together with Bercoon, Goldstein controls Defendant LADP and has signatory

2   authority over its bank accounts, including at least one account in the name of

3   "LADP, LLC," where investor monies are deposited.  In the past, Goldstein has

4   held various positions with public companies, including:

5            a.     Chairman of the Board and CEO of RCG Companies, Inc. (now

6                   known as OneTravel Holdings, Inc.) during the period February

7                   1, 2004, to June 6, 2006, and April 28, 2005, to June 6, 2006,

8                   respectively;

9            b.     A Director of Market Central, Inc. (now known as Scientigo,

10                  Inc.) during the period February 2003 to November 2004; and

11           c.     The Company and Investor Relations contact for Generation

12                  Zero Group as of  June 14, 2010.

13  Goldstein is also an officer of Ibar Management Group, LLC, a company located in

14  Atlanta, Georgia.

15       7.     **Marc E. Bercoon** resides in Atlanta Georgia, and owns, directly or

16  indirectly in conjunction with Goldstein, a substantial interest in L.A. Digital, a

17  television and film production company with offices in Los Angeles and New

18  York.  Bercoon is, in fact, the Chairman of L.A. Digital, but he is not involved in

19  its daily operations.  Together with Goldstein, Bercoon controls Defendant LADP

20  and has signatory authority over its bank accounts, including at least one account

21  in the name of "LADP, LLC," where investor monies are deposited.  Bercoon is an

22  attorney who was licensed to practice law in the State of Illinois until at least 2008.

23  Bercoon has also held himself out either as a Certified Public Accountant, or as

24  having passed the CPA examination.  In the past, Bercoon has held various

25  positions with public companies, including:

26           a.     General Counsel and Secretary of the Broadway Stores, Inc.

27                  from February 1993 to February 1994, and Senior Vice

28                  President beginning in February 1994;

b.   Chief Financial Officer and President of RCG Companies, Inc. (now known as OneTravel Holdings, Inc.) from February 28, 2005, to April 28, 2005, and from April 28, 2005, to June 6, 2006, respectively;

c.   Assistant Secretary for Market Central, Inc. (now known as Scientigo, Inc.) as of March 25, 2005, when he signed a restated certificate of incorporation that was attached as an Exhibit to a Form S-4 registration statement filed on November 10, 2005; and

d.   A Director, as of March 2, 2001, of Mixson Corporation.

Bercoon is also a Director of Growth Capital Group, a company that purportedly provides financial advisory and investment banking services; and an officer of Ibar Management, LLC.

## THE FRAUDULENT SCHEME

### A.   The Defendants Generally Solicit Investors Through Cold Calls

8.   In approximately mid-2009, the Defendants, through the use of sales agents, began soliciting potential investors throughout the United States, including through the use of cold calling, sometimes followed up by an email. Potential investors are told that they are being solicited to invest in L.A. Digital.

9.   The Defendants cause potential investors to be sent, by Federal Express, email and/or United States mail, a package containing a brochure entitled "Confidential Investor Information," which also often includes a "Confidential Private Placement Memorandum," a Subscription Agreement, a "Purchaser Questionnaire" and a "Purchaser Representative Questionnaire." Defendants Bercoon and Goldstein participated in the drafting of each of these documents.

10.   Once LADP has received the investor's investment, the Defendants send to the investor a cover letter purporting to be on "LA Digital Post" letterhead, but purporting to enclose a certificate representing stock in LADP, together with a

1    "Certificate" certifying that the investor is the holder of a certain number of shares

2    of LADP, not L.A. Digital.  The cover letter and Certificate bear Goldstein's

3    signature.

4        11.    From mid-2009 through the present, the Defendants have raised at

5    least $3.2 million from approximately 110 investors in the United States, in the

6    unregistered offering in L.A. Digital described in this Complaint.

7    **B.    The Defendants Make Material Misrepresentations About The**

8    **Investment And Misappropriate Investor Monies**

9        12.    The Defendants, through their sales agents, orally represent to potential

10   investors that L.A. Digital is "going public" or going to be the subject of an initial

11   public offering (IPO) within a short period of time, such as sixty or ninety days, and

12   that its shares will be traded on the American Stock Exchange ("AMEX"), or some

13   other public exchange such as the New York Stock Exchange or NASDAQ.  The

14   Defendants further represent through their sales agents that L.A. Digital has only a

15   limited number of shares for sale, that the potential investor needs to act quickly to

16   be included in this opportunity, that the company will be worth $160 million, and

17   that investors who bought shares prior to the IPO will make substantial profits.

18       13.    In some cases, these oral representations are followed by an email from

19   the sales agent making further similar representations, including that the projected

20   return on investment ("ROI") is "in the 200-300% range conservatively," but that

21   "we feel that the market will support a 300-500% return. . . ," and that L.A. Digital

22   "is scheduled to enter the AMEX!"  These emails also include a link to the website

23   of L.A. Digital and a description of its post-production business.

24       14.    In addition to the oral and email representations made by the

25   Defendants' sales agents, the "Confidential Investor Information Memorandum"

26   authored by Defendants Bercoon and Goldstein makes representations about "L.A.

27   Digital Post" that are materially misleading, in that the "shares" in fact sold to

28   investors are stock of LADP, not L.A. Digital.  Among other representations, the

6

Memorandum:

    a.    Prominently features the logo of "L.A. Digital Post" and its website address on the first page;

    b.    Includes a detailed description of L.A. Digital's post-production business, history and reputation, and lists prominent motion picture studios and television networks which have, in fact, been clients of L.A. Digital, as well as a "Partial Client List" setting forth highly rated television shows and a list of movies for which L.A. Digital has provided post-production services;

    c.    Prominently features descriptions of Goldstein, described as "Chairman," and Bercoon, described as "Vice Chairman and Chief Financial Officer," of L.A. Digital, asserting that under Goldstein's leadership, a physician staffing company he founded named Nationwide Medical Services, Inc. grew "at a rate in excess of 200% per year for its first six years, achieving $18 million in sales by 1998"; and touting Bercoon's legal and accounting background, including that he graduated from UCLA School of Law, and passed the Illinois CPA and bar exams in 1982 and 1985 respectively.   In fact, neither Goldstein nor Bercoon have any current involvement in the day-to-day operations of L.A. Digital.

    d.    Sets forth "Financial Highlights," including that "LA Digital's revenues for fiscal year end were $13.375 million," and that "There are also several acquisition targets that management has identified," notwithstanding that L.A. Digital in fact does not presently intend to acquire any companies.  Additionally, the Memorandum does not disclose that L.A. Digital is not currently a profitable company, and that it is in default with its secured

1             lender.

2       15.     In order to induce one investor, Ali Siddiqui, who had invested

3 $50,000, to invest an additional $950,000 in or about December 2009, Defendants

4 Goldstein and Bercoon executed a "Put Agreement," in which they agreed to buy

5 back the 950,000 in additional shares purchased by Dr. Siddiqui at the $1 per share

6 price at which he purchased them, at any time during the period from November 4,

7 2010, through February 2, 2011.

8       16.     In fact, no public offering has been held for L.A. Digital Post.  Instead,

9 in a "bait and switch," investors receive worthless certificates representing "shares"

10 in Defendant LADP, and Defendants Goldstein and Bercoon steal their money.

11       17.     Specifically, from July 9, 2009 to July 12, 2010, undisclosed to

12 investors, Defendants Goldstein and Bercoon have misappropriated for their own

13 use and the use of other companies they control at least $874,289 of the $3.2 million

14 in investor funds raised and deposited into Wachovia Bank accounts in the name of

15 LADP and "LADP, LLC," which they control, and on which they are signatories, as

16 follows:

17            a.      Goldstein received at least $1,000 by check, received a total of

18                    $22,000 in transfers to a Wachovia Bank account in his name, and

19                    withdrew $107,600 from the LADP, LLC account.

20            b.      Bercoon withdrew a total of $171, 589 from the LADP, LLC bank

21                    account and the LADP Acquisition bank account.

22            c.      Goldstein and/or Bercoon caused at least $510,800 in transfers to

23                    be made from the LADP, LLC bank account to another Wachovia

24                    Bank account in the name of HMRZ Consulting LLC, for which

25                    account Bercoon is a signatory.

26            d.      Goldstein and/or Bercoon caused at least $61,300 in transfers to

27                    be made from the LADP, LLC bank account to an account in the

28                    name of Ibar Management Group, an entity for which both

1                        Goldstein and Bercoon are officers.

2       18.    In response to repeated inquiries by investor Ali Siddiqui regarding the

3 failure of L.A. Digital to go public, Defendant Goldstein and his sales agent, Alan

4 Weiner, met with Dr. Siddiqui in Fort Lauderdale, Florida in or about June or July

5 2010. At this meeting, Goldstein falsely reassured Dr. Siddiqui that he had made a

6 sound investment, and Goldstein and Weiner described Goldstein's prior success at

7 bringing other companies public. In order to lull Dr. Siddiqui into believing his $1

8 million investment was safe, Goldstein and Weiner falsely assured Dr. Siddiqui that

9 they were working on multiple avenues to take L.A. Digital public and that he

10 would profit from his investment.

11       19.    Subsequently, on or about August 23, 2010, in response to further

12 inquiries from Dr. Siddiqui as to the status of his investment, Defendants Goldstein

13 and Bercoon falsely told Dr. Siddiqui in a telephone conversation that everything

14 was fine, and that while two smaller investors had complained to the Commission,

15 there was nothing to worry about.

16       20.    In response to inquiries by Gary Migdal, the president of L.A. Digital,

17 regarding calls he was receiving from investors inquiring why a promised "public

18 offering" of L.A. Digital stock that Migdal knew nothing about had not taken place,

19 Bercoon falsely represented to Migdal that the situation involved "identity theft,"

20 and that he was "handling" or "dealing with" it.

21                        **FIRST CLAIM FOR RELIEF**

22           **OFFER AND SALE OF UNREGISTERED SECURITIES**

23       **Violations of Sections 5(a) and 5(c) of the Securities Act**

24                   **(Against All Defendants)**

25       21.    The Commission realleges and incorporates by reference paragraphs 1

26 through 20 above.

27       22.    Defendants LADP, Goldstein and Bercoon, by engaging in the

28 conduct described above, directly or indirectly, made use of means or instruments

1  of transportation or communication in interstate commerce or of the mails, to offer

2  to sell or to sell securities, or to carry or cause such securities to be carried through

3  the mails or in interstate commerce for the purpose of sale or for delivery after

4  sale.

5       23.    No registration statement has been filed with the Commission or has

6  been in effect with respect to the offering alleged herein.

7       24.    By engaging in the conduct described above, Defendants LADP,

8  Goldstein and Bercoon have violated, and unless restrained and enjoined will

9  continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§

10  77e(a) and 77e(c).

11  <center>SECOND CLAIM FOR RELIEF</center>

12  <center>FRAUD IN THE OFFER OR SALE OF SECURITIES</center>

13  <center>Violations of Section 17(a) of the Securities Act</center>

14  <center>(Against All Defendants)</center>

15       25.    The Commission realleges and incorporates by reference paragraphs 1

16  through 20 above.

17       26.    Defendants LADP, Goldstein and Bercoon, and each of them, by

18  engaging in the conduct described above, directly or indirectly, in the offer or sale

19  of securities by the use of means or instruments of transportation or

20  communication in interstate commerce or by use of the mails:

21            a.    with scienter, employed devices, schemes, or artifices to

22                 defraud;

23            b.    obtained money or property by means of untrue statements of a

24                 material fact or by omitting to state a material fact necessary in

25                 order to make the statements made, in light of the

26                 circumstances under which they were made, not misleading; or

27            c.    engaged in transactions, practices, or courses of business which

28                 operated or would operate as a fraud or deceit upon the

1          purchaser.

2       27.    By engaging in the conduct described above, Defendants LADP,

3 Goldstein and Bercoon violated, and unless restrained and enjoined will continue

4 to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

5 <div align="center">**THIRD CLAIM FOR RELIEF**</div>

6 <div align="center">**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**</div>

7 <div align="center">**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**</div>

8 <div align="center">**(Against All Defendants)**</div>

9       28.    The Commission realleges and incorporates by reference paragraphs 1

10 through 20 above.

11       29.    Defendants LADP, Goldstein and Bercoon, and each of them, by

12 engaging in the conduct described above, directly or indirectly, in connection with

13 the purchase or sale of a security, by the use of means or instrumentalities of

14 interstate commerce, of the mails, or of the facilities of a national securities

15 exchange, with scienter:

16           a.     employed devices, schemes, or artifices to defraud;

17           b.     made untrue statements of a material fact or omitted to state a

18                material fact necessary in order to make the statements made,

19                in the light of the circumstances under which they were made,

20                not misleading; or

21           c.     engaged in acts, practices, or courses of business which

22                operated or would operate as a fraud or deceit upon other

23                persons.

24       30.    By engaging in the conduct described above, Defendants LADP,

25 Goldstein and Bercoon violated, and unless restrained and enjoined will continue

26 to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

27 thereunder, 17 C.F.R. § 240.10b-5.

28

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

### II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants LADP, Goldstein and Bercoon and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c), Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### III.

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of Defendants LADP, Goldstein and Bercoon; prohibiting each of the Defendants from destroying documents; and ordering accountings by each of the Defendants.

### IV.

Order Defendants LADP, Goldstein and Bercoon to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

### V.

Order Defendants LADP, Goldstein and Bercoon to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

\*

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VII.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:  September 14, 2010

Karen Matteson
Jason P. Lee
Attorneys for Plaintiff
Securities and Exchange Commission

13